UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENTON DWAYNE THOMPSON,

                     Petitioner,

     v.

BRIAN WILLIAMS,

                    Respondent.

No. C09-5265 RJB/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  June 17, 2011**

      Mr. Thompson, a Washington state prisoner housed in Southern Desert Correctional Center in Indian Springs, Nevada, originally filed his federal habeas corpus petition in the District of Nevada on March 30, 2009.  ECF No. 7.  His petition was transferred to this Court by the District of Nevada on May 4, 2009.  *Id.*  Respondent filed an Answer and the relevant state court record.  ECF Nos. 17 and 18.   This matter was then stayed while Mr. Thompson returned to state court to exhaust two (claims six and seven) of his ten claims.  *See* ECF Nos. 22 and 25.

      On December 27, 2010, Mr. Thompson moved to lift the stay after the Washington Supreme Court dismissed his appeal as frivolous.  He also requested an expansion of the record.  ECF No. 43.  The Court granted Mr. Thompson's motion to lift the stay, directed the Respondent to file an answer to Mr. Thompson's sixth and seventh habeas claims, and denied the request for expansion of the record.  *See* ECF Nos. 43 and 45.   Respondent filed an Answer to Mr. Thompson's sixth and seventh habeas claims and the relevant state court record on March 2, 2011.  ECF Nos. 46 and 47.

REPORT AND RECOMMENDATION - 1

Having carefully considered the parties' filings and relevant record, the undersigned recommends that the petition be denied and this action dismissed with prejudice.

## BACKGROUND

### A.    Factual Background

On March 10, 2000, Mr. Thompson was found guilty by a Pierce County Superior Court jury of one count of murder in the first degree and one count of assault in the first degree.   ECF No. 18, Exh. 1.   The trial court imposed a sentence of 416 months confinement on the murder conviction and 123 months confinement on the first degree assault conviction to run consecutively to each other, in addition to two 60 month sentence enhancements, for a total sentence of 659 months.   *Id.*, Exh. 1 at p. 6.   The Washington Court of Appeals summarized the facts of Mr. Thompson's crimes as follows:

> By amended information, the State charged Thompson with premeditated first degree murder and, in the alternative, first degree felony murder of Julie Maroni; with first degree assault of Calvin Labee, Jr.; and with second degree unlawful possession of a firearm.  The State also charged firearm enhancements on the murder and assault counts.  The amended information identifies Duane Seraile as a codefendant.
>
> The incidents leading to these charges occurred on July 8, 1998, at the Sherwood Inn in Tacoma.  Labee and Maroni, who were motel guests, had gone out at around 1:00 a.m. in Labee's car, a white 1998 Cadillac DeVille with gold rims and gold trim.  When they returned shortly thereafter and began heading toward the motel door, Labee saw three men coming down the stairs, one of whom he described as appearing to be Mexican and wearing a tan, hooded pullover.
>
> As Labee walked around a van, he heard Maroni scream and, as he turned to see what was happening, he saw the man in the tan pullover taking out a gun.  He could not see Maroni.  At that time, Labee noticed that the man in the tan pullover had long, black hair.
>
> As Labee ran away, a bullet hit him in the buttocks.  He fell to the ground, but he got back up and ran in a zigzag fashion out of the parking lot.  He could

REPORT AND RECOMMENDATION - 2

hear seven to eight gunshots and, when he turned as he entered a tavern across the street, he saw two people running away from the motel into a field.

The police arrived and discovered Maroni's body by a chain link fence on the side of the motel.  She had been hit by a minimum of six bullets and had died from multiple gunshot wounds.

Police efforts to identify the perpetrators were unsuccessful until they received a tip in March 1999, which eventually led them to Melissa Arey.  Arey described suspicious events that occurred while she and Ramon Jones were staying at the Sherwood Inn for a few days around the Fourth of July weekend in 1998.

During the night of July 7, 1998, Thompson, who went by the name "Rock," along with Sharon Brown, and Seraile, who Arey described as Mexican and having black, curly, shoulder-length hair, visited their motel room.  Arey testified that Jones, Thompson, and Seraile were away from the room at some point, during which time she heard six to eight gunshots.  Jones then returned looking scared; Thompson and Seraile did not return.

Sharon Brown told the investigators and testified that Jones was a friend who supplied her with cocaine in exchange for her driving him around to make drug deliveries.  She said that Jones called her at around 1:00 a.m. on the date of the incident, asking her to pick up a package and bring it to him at the Sherwood Inn.  When Brown arrived at the motel with the package, Jones took it from her purse; Brown then saw that it contained a gun.

Jones handed the gun to Thompson and whispered something to him.  The three men then left the room and not long after, Brown heard five to six gunshots.  When Jones returned to the room, he appeared "adrenaline maxed out, eyes huge ... he couldn't sit still if he tried."  19 Report of Proceedings (RP) at 1385.  According to Brown, Jones kept saying, "It wasn't supposed to happen that way." 19 RP at 1386.

Jones testified at trial[1] that he and Arey stayed at the Sherwood Inn for approximately four days after the Fourth of July holiday.  When Thompson and Seraile came to his motel room around 9:00 p.m. one night, Jones asked Thompson if he had seen Labee's white Cadillac with its gold rims.

According to Jones, Thompson later told Seraile that he "was going to take" the Cadillac.  20 RP at 1515.  Thompson had a .45 caliber semiautomatic gun, but he asked Jones if he could get him another gun.  Jones believed that Thompson was going to use the gun to steal the car but did not think that Thompson would shoot anyone.

REPORT AND RECOMMENDATION - 3

1

2   Jones then called Brown, who brought the package to the motel room.  It
contained a .38 caliber gun; Jones gave it to Thompson, who in turn gave it to
3   Seraile.  Jones stated that he then went outside by himself to get some "dope"
from his car to pay Brown for her delivery but he discovered he had locked his
keys in the car.  20 RP at 1519.

4

5   Jones said that during this trip to his car, he heard gunshots and then saw
Thompson and Seraile outside the motel room. He said that Seraile shot first, but
he could not see Seraile's target.

6

7   Jones then saw a white woman running with Thompson following and
shooting at her.  The woman climbed over a fence, but fell.  Thompson reached
8   the fence, and Jones heard a couple more shots.  In total, he heard six shots from
the .45 caliber gun and two shots from the .38 caliber gun.  Both Thompson and
9   Seraile then jumped over the fence and ran.

10   Dominique Stewart, Seraile's niece, provided alibi testimony for
Thompson.  She testified that she and Thompson were living together in July
11   1998, and that Thompson went out during the evening of July 7, 1998, shortly
after receiving a phone call from Jones.  But he called her an hour or two later, at
12   around 11:00 p.m., and asked her to pick him up at the Sherwood Inn.  She did so,
and they returned to her residence; Seraile and her children were also there.
13   Stewart said that she and Thompson then went to bed.

14

15   The jury convicted Thompson of first degree murder and first degree
assault but acquitted him of second degree unlawful possession of a firearm.  By
16   special verdict, the jury found that Thompson or an accomplice was armed with a
firearm during the commission of the murder and the assault.

17

18   [1] The State charged Jones with first degree murder, first degree assault, and
unlawful possession of a firearm, but he entered into a plea agreement and
19   testified at Thompson's trial. [Footnote by the court.]

20   ECF No. 18, Exh. 8.

21   **B.   Procedural Background**

22   Through counsel, Mr. Thompson appealed his convictions and sentence.  ECF No. 18,

23   Exhs. 3 and 4.  He also filed a *pro se* supplemental brief.  *Id.*, Exh. 5.  The State of Washington

24   filed a brief in opposition and Mr. Thompson's counsel filed a reply.  *Id.*, Exhs. 6 and 7.  On July

25   29, 2003, the Washington Court of Appeals affirmed the first degree murder conviction, but

26

REPORT AND RECOMMENDATION - 4

reversed and remanded the first degree assault conviction because the accomplice liability jury instruction was defective and found not harmless to the assault conviction.  *Id.*, Exh. 8.

On January 21, 2004, Mr. Thompson filed a petition for review in the Washington Supreme Court.  *Id.*, Exh. 9.  The petition was denied on September 9, 2004.  *Id.*, Exh. 10.  On September 20, 2004, the Washington Court of Appeals entered a mandate.  *Id.*, Exh. 11.

In December 2004, Mr. Thompson was re-tried on the first degree assault conviction, and was again convicted of that charge.  On December 17, 2004 he was re-sentenced.  *Id.*, Exh. 12.  Mr. Thompson filed a notice of appeal.  *Id.*, Exhs. 13 and 14.   The State of Washington filed a brief in opposition.  *Id.*, Exh. 15.  Mr. Thompson filed a statement of additional grounds for review.  *Id.*, Exh. 16.  On April 4, 2006, the Washington Court of Appeals affirmed Mr. Thompson's convictions.  *Id.*, Exh. 17.  On July 12, 2006, the Washington Court of Appeals issued a mandate, but on August 17, 2006, Mr. Thompson filed a motion to recall that mandate.  *Id.*, Exhs. 18 and 19.   After the State filed its response to the motion to recall the mandate, the Court of Appeals issued an order granting the motion to recall the mandate.  *Id.*, Exh. 20.  Mr. Thompson then filed a motion for reconsideration of the Court of Appeals' decision.  *Id.*, Exh. 21.  That motion was denied on December 8, 2006.  *Id.*, Exh. 22.

Mr. Thompson filed a petition for review in the Washington Supreme Court.  *Id.*, Exh. 23.  The Washington Supreme Court denied the petition for review on October 30, 2007.  *Id.*, Exh. 24.  On November 19, 2007, the Washington Court of Appeals again issued a mandate.  *Id.*, Exh. 25.

On February 7, 2005, Mr. Thompson filed a personal restraint petition and supporting brief.  *Id.*, Exh. 26.  The State filed a response and Mr. Thompson filed a reply brief.  *Id.*, Exhs. 27 and 28, respectively.  On July 11, 2005, the Washington Court of Appeals denied all of Mr.

REPORT AND RECOMMENDATION - 5

Thompson's claims except as to his offender score calculation and the case was remanded for

resentencing.  *Id.*, Exh. 29 at pp. 5-6.  Mr. Thompson filed a motion for discretionary review in

the Washington Supreme Court.  *Id.*, Exh. 30.  On October 10, 2005, that motion was denied.

*Id.*, Exh. 31.  On December 13, 2005, the Washington Court of Appeals issued a certificate of

finality.  *Id.*, Exh. 32.

On February 3, 2006, Mr. Thompson was again re-sentenced.  *Id.*, Exh. 2.

On March 3, 2006, Mr. Thompson filed a notice of appeal to the Washington Court of Appeals.

*Id.*, Exhs. 33 and 34.  Respondent State of Washington filed a brief in opposition.  *Id.*, Exh. 35.

Mr. Thompson filed a statement of additional grounds for review.  *Id.*, Exh. 36.  On April 8,

2008, the Washington Court of Appeals affirmed Mr. Thompson's convictions in a published

opinion.  *Id.*, Exh. 37.

On May 5, 2008, Mr. Thompson filed a petition for review in the Washington Supreme

Court.  *Id.*, Exh. 38.  The petition was denied on November 6, 2008.  *Id.*, Exh. 39.  On November

13, 2008, the Washington Court of Appeals issued a mandate.  *Id.*, ECF No. 40.

On May 4, 2009, Mr. Thompson's federal habeas petition was transferred to this Court.

ECF No. 7.  After this Court granted Mr. Thompson's motion to stay (ECF No. 25), he filed a

personal restraint petition and supporting brief in the Washington Court of Appeals on October

23, 2009. ECF No. 47, Suppl. Exh. 1, pp. 1 and 6.  Mr. Thompson also filed a statement of

additional authorities.  *Id.*, Suppl. Exh. 2.  Respondent State of Washington filed a response.  *Id.,*

Suppl. Exh. 3.  On April 5, 2010, the Washington Court of Appeals dismissed the petition.  *Id.*,

Suppl. Exh. 4.  Mr. Thompson filed a motion for discretionary review in the Washington

Supreme Court.  *Id.*, Suppl. Exh. 5, at 2.  The motion for discretionary review was denied on

REPORT AND RECOMMENDATION - 6

December 9, 2010.  *Id.*, Suppl. Exh. 6.  This Court lifted the stay of this case on January 14, 2011.  ECF No. 45.

## ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Thompson presents the following issues for federal habeas review:

1)    The accomplice liability jury instruction relieved the State of its burden to prove every element of the offense of first degree murder.

2)    Trial counsel's failure to bring a motion for new trial rendered his assistance ineffective.

3)    The exclusion of hearsay statements from trial violated Thompson's right to due process and a fair trial.

4)    The trial court's instruction on jury unanimity violated Thompson's right to due process.

5)    Evidence presented at trial was constitutionally insufficient to support a first degree murder and assault conviction.

6)    Admission of other crimes evidence to prove an element of another crime was error and an abuse of discretion.

7)    The trial court's jury instruction regarding the admission of evidence denied Thompson's right to due process.

8)    The trial court's admission of prior testimony violated Thompson's constitutional right to confront and cross-examine witnesses.

9)    Failure to instruct the jury on the elements of the sentence enhancement denied Thompson his constitutional right to trial by jury.

10)    The firearm enhancement and community placement portion of the sentence is in excess of the statutory maximum for the crime.

ECF No. 7.

## EVIDENTIARY HEARING

Evidentiary hearings are not usually necessary in a habeas case.  If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold

REPORT AND RECOMMENDATION - 7

an evidentiary hearing on the claim unless the applicant shows that:  (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. § 2254(e)(2) (1996).

Mr. Thompson argues that an evidentiary hearing is necessary only to establish that his counsel, whom he claims rendered ineffective assistance, deprived him of a substantive or procedural right.  ECF No. 48, p. 3.  Mr. Thompson also states that Section 2254(e)(2) "does not apply to the instant petition," and therefore, this Court should consult pre-AEDPA[1] standards to determine whether an evidentiary hearing is warranted.  The Court is unaware of any authority mandating that it ignore Section 2254(e)(2).

If the record refutes a petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.  *Schiro v. Landrigan,* 550 U.S. 465, 474, 127 S. Ct. 1933 (2007).   "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record."  *Totten v. Merkle*, 137 F.3d 1172, 1176 (1998). Mr. Thompson's claims raise purely issues of law and not factual disputes and therefore, an evidentiary hearing resolving questions of fact is not necessary for the Court to adjudicate his claims.  Additionally, the Court's review of the record in this case confirms that he is not entitled to habeas relief.  *See Landrigan*, 550 U.S. at 474.   Therefore, Mr. Thompson is not entitled to an evidentiary hearing on any of his habeas claims.

---

[1] Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

REPORT AND RECOMMENDATION - 8

### STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1983). Federal habeas corpus relief does not lie for mere errors of state law.  *Estelle v. McGuire,* 502 U.S. 62, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 110 S. Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S. Ct. 871, 79 L.Ed.2d 29 (1984).

A federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

State court decisions must be given the benefit of the doubt.  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and "nevertheless arrives at a result different from that precedent."  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06).

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the

REPORT AND RECOMMENDATION - 9

Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). However, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

**A.      Claim One – Accomplice Liability Instruction**

Mr. Thompson contends that the accomplice liability jury instruction given in his case relieved the State of its burden to prove every element of the offense of first degree murder. ECF No. 7, p. 3 (internal numbering)[2]. The accomplice liability jury instruction, Jury Instruction No. 11, stated the following:

> A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.
>
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:

---

[2] The documents found at CM/ECF No. 7 were scanned in such a manner that CM/ECF pagination is illegible. For ease of reference, the Court refers to the internal page numbers used by Mr. Thompson (found at the bottom middle of the pages).

REPORT AND RECOMMENDATION - 10

(1) solicits, commands, encourages, or requests another person to commit the crime; or

(2) aids or agrees to aid another person in planning or committing a crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence.  A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime.  However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

ECF No. 18, Exh. 18, at Instruction No. 11.

Mr. Thompson contends that by using the term "a" crime, rather than "the" crime, the jury was improperly allowed to find him guilty of murder without having to find that, with knowledge, he promoted or facilitated the commission of that crime.  ECF No. 7-2, p. 4.  He further argues that the instruction can only be found to be harmless if the missing element is supported by *uncontroverted evidence* but that in his case, the Washington Court of Appeals erroneously relied on *sufficient evidence* of the crime in concluding that the instruction was harmless.

The Washington Court of Appeals rejected this claim as follows:

The accomplice liability statute provides, in relevant part:

(3)  A person is an accomplice of another person in the commission of a crime if:

(a)  With knowledge that it will promote or facilitate the commission of the crime, he

(i)  solicits, commands, encourages, or requests such other person to commit it; or

(ii)  aids or agrees to aid such other person in planning or committing it.

RCW 9A.08.020(3)(a); *State v. Brown,* 147 Wn.2d 330, 338, 58 P.3d 889 (2002).

REPORT AND RECOMMENDATION - 11

Thus, for accomplice liability to attach, a defendant must knowingly aid in the commission of the specific crime charged. *Brown,* 147 Wn.2d at 338. The court's instruction here misstated the law by saying that a person who acts with knowledge that his actions will promote a crime can be an accomplice. *Brown,* 147 Wn.2d at 338. But an error in an accomplice instruction may be harmless if we can "conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *Brown,* 147 Wn.2d at 341 (quoting *Neder v. United States,* 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). The *Brown* court held that the erroneous accomplice liability instruction was harmless beyond a reasonable doubt where the evidence showed that the defendant acted as a principal in the crime. 147 Wn.2d at 341.

As to the assault conviction, the State concedes that under the court's accomplice liability instruction, the jury could have found Thompson guilty of assault based on his agreement to commit robbery without finding that he knowingly facilitated or participated in the assault of Labee. We agree, but as we discuss below, the evidence was sufficient to support the charge. Thus, we reverse and remand for a new trial on the assault charge.

As to the murder conviction, the State argues that the defective instruction was harmless. It contends that it was harmless as to felony murder because felony murder imposes its own strict liability upon participants in the predicate felony. And it argues that the error was harmless as to premeditated murder because there was no evidence that Thompson acted as an accomplice; rather, the evidence pointed to Thompson as the principal in Maroni's murder.

Thompson disagrees, arguing that the State charged him as principal or accomplice and that the instructions allowed the jury to find him guilty in either role. He further contends that because the jury had only a general verdict form on the first degree murder charge, it is not possible to determine whether the jury based its verdict on accomplice liability.

Although the jury verdict does not indicate the jury's basis for finding Thompson guilty, the State's evidence pointed to Thompson as the principal, not as the accomplice in Maroni's murder. Jones testified that he saw Thompson with a .45 caliber gun before the incident, he saw Thompson pursue Maroni while shooting at her, he heard six gunshots from the .45 caliber gun, and he saw Thompson at the fence and heard additional shots after Maroni had climbed over the fence and fallen to the ground.

Jones' eyewitness testimony was supported by the police investigation. The police recovered four .45 caliber casings around Maroni's body and four .45 caliber casings in the area between the fence and the parking lot. The forensics evidence on the eight .45 caliber casings revealed that they were all fired from the same firearm. The police also recovered a .45 caliber bullet from underneath

REPORT AND RECOMMENDATION - 12

Maroni's body; this bullet correlated with the wound Maroni received that entered the front of her abdomen and exited through her back; a forensics expert concluded that it was fired from the same .45 caliber firearm.

Further, there was no credible evidence indicating that someone other than Thompson was the shooter. Thompson argues that it was unclear who shot Maroni because Labee testified that he saw three men on the stairs but "did not recall seeing Thompson, who is Black." Appellant's Reply Br. at 5. But Labee said that he turned and ran and did not know which man shot him and which chased Maroni. Further, Labee testified that he was not paying much attention to the men on the stairs and could not really describe them. Thus, Labee's inability to identify Thompson did not discredit Jones' eyewitness testimony.

Further, Thompson relied on an alibi defense at trial, contending through his girlfriend that he was home at the time of the shooting. In rejecting the alibi and convicting Thompson, the jury necessarily had to accept Jones' testimony. Thompson also points to the jury's acquittal on the unlawful possession of a firearm charge as showing "a distinct possibility" that the jury found Thompson guilty of shooting Maroni as an accomplice. Appellant's Reply Br. at 5. Because the jury's reasoning inheres in the verdict, we cannot determine why the jury produced apparently inconsistent verdicts. But our focus in determining whether the instructional error was harmless must be on the evidence, not on the jury's decision on another charge. As we discuss above, because there is no credible evidence that Thompson was acting as an accomplice, we are satisfied beyond a reasonable doubt that the jury verdict on the murder charge would have been the same absent the error. *Brown*, 147 Wn.2d at 341.

We further see no possibility that the instruction error affected the jury's verdict regarding the felony murder alternative. Thompson stated that he was going to "take" the Cadillac; he possessed a firearm and procured a firearm for Seraile for use in the robbery; and, shortly thereafter, he approached the occupants of the Cadillac, fatally shooting one. 20 RP at 1515.

This evidence establishes beyond a reasonable doubt that Thompson was guilty of felony murder. Thus, the erroneous instruction was harmless error as to that charge. *Brown*, 147 Wn.2d at 341. Thompson's claim of reversible error on this basis fails. (Footnote omitted.)

ECF No. 18, Exh. 8, at 5-9.

Federal law is not to the contrary. In fact, a claim that a jury instruction is incorrect under state law is not a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 68-72 (1991); *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048,

REPORT AND RECOMMENDATION - 13

*modified*, 768 F.2d 1090 (1986); *Mitchell v. Goldsmith*, 878 F.2d 318 (9th Cir. 1989).  The

petitioner must prove the failure to properly instruct the jury violated some right guaranteed

defendants by the Fourteenth Amendment.  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

"[R]eview is limited to whether an allegedly defective jury instruction 'so infected the entire trial

that the resulting conviction violates due process.'"  *Carriger v. Lewis*, 971 F.2d 329, 334 (9th

Cir.), *cert. denied*, 507 U.S. 992 (1992) (*quoting Cupp*, 414 U.S. at 147).  "It is not sufficient that

the instruction is erroneous; rather the petitioner must establish that there was a reasonable

likelihood that the jury applied the instruction in a way that violated a constitutional right."

*Carriger*, 971 F.2d at 334.  The instruction must not be judged in "artificial isolation", but must

be considered within the context of the jury instructions as a whole and in light of the entire trial

record.  *Cupp*, 414 U.S. at 147; Estelle, 502 U.S. at 72.  "In evaluating the instructions, we do not

engage in a technical parsing of this language of the instructions, but instead approach the

instructions in the same way that the jury would – with a 'commonsense understanding of the

instruction in the light of all that has taken place at the trial.'"  *Johnson v. Texas*, 509 U.S. 350,

368 (1993), *quoting Boyde v. California*, 494 U.S. 370, 381 (1990).

    As was noted by the Washington Court of Appeals, the instruction was erroneous because

it misstated the law by saying that a person who acts with knowledge that his actions will

promote "a crime" can be an accomplice.  However, an error in an accomplice instruction may

be harmless if a court could "conclude beyond a reasonable doubt that the jury verdict would

have been the same absent the error."  ECF No. 18, Exh. 8, pp. 6-7 (*citing State v. Brown,* 147

Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States,* 527 U.S. 1, 19, 119 S. Ct.

1827, 144 L. Ed. 2d 35 (1999)).  In *Brown*, the erroneous accomplice liability instruction was

REPORT AND RECOMMENDATION - 14

found harmless beyond a reasonable doubt where the evidence showed that the defendant acted as a principal in the crime.  147 Wn.2d at 341.

The Washington Court of Appeals summarized the evidence and found that the evidence established that Mr. Thompson did not act as an accomplice in the murder of Ms. Maroni and found *beyond a reasonable doubt* that Mr. Thompson was also clearly guilty of felony murder. ECF No. 18, Exh. 8, p. 9.  That evidence included Jones' testimony that he saw Mr. Thompson with the .45 caliber gun before the incident, he saw Mr. Thompson running after Ms. Maroni while shooting at her, he heard six gunshots from the .45 caliber gun, he saw Mr. Thompson at the fence, and he heard additional shots after Ms. Maroni had climbed over the fence and fallen to the ground.   Mr. Jones's eyewitness testimony was also supported by the police investigation, which included the .45 caliber casings around Ms. Maroni's body and the .45 caliber bullet found under her body that correlated with her wounds and was proven to have been fired by the same gun.  Although Mr. Thompson argued that it was unclear who shot Ms. Maroni because Mr. Labee was unable to identify the shooter, the Washington Court of Appeal found that Mr. Labee's inability to identify Mr. Thompson did not discredit Jones' eyewitness testimony because Mr. Labee testified that he turned and ran and did not know which man shot him and which chased Maroni and that he could not really describe the men on the stairs.

This Court similarly concludes from its independent review of the record that the evidence pointed to Mr. Thompson as the principal in Ms. Maroni's murder, that there was no credible evidence that he was acting as an accomplice, and that the jury could certainly have placed more credence in Jones' eyewitness testimony and the forensic evidence than in the testimony of Mr. Thompson's alibi witness.  Mr. Thompson has failed to prove that the failure to

REPORT AND RECOMMENDATION - 15

properly instruct the jury as to accomplice liability so infected his entire trial that his resulting conviction violates due process.

The Court concludes that the state courts' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(2).  Therefore, the undersigned recommends that Mr. Thompson's first habeas claim be denied and dismissed with prejudice.

**B.      Claim Two – Ineffective Assistance of Counsel**

In his second habeas claim, Mr. Thompson contends that his trial counsel's failure to bring a motion for a new trial rendered his assistance constitutionally ineffective.   ECF No. 7-1, p. 5.  He describes his claim as follows:

> During trial, the State introduced evidence of Thompson's criminal history contrary to the reasons for stipulating to those facts and trial counsel did not object.  In light of that, the jury returned inconsistent verdicts relating to the murder charge and the unlawful possession of a firearm charge.  Subsequently, counsel made an oral motion for a new trial, but failed to formally file the motion even though the trial court advised him to "make your motion and I'll rule on them."

*Id.*

The Washington Court of Appeals rejected Mr. Thompson's second habeas claim as follows:

> Petitioner first claims that he was denied his right to effective assistance of counsel when his attorney failed to file and argue for dismissal based on inconsistent jury verdicts.  The State tried Thompson for murder, assault, and unlawful possession of a firearm.  As the State's theory at trial was that Thompson was the principal and murdered Julie Maroni, he claims that the State's failure to prove the firearm charge was also a failure to prove an element of the murder charge.
>
> But this court rejected this identical argument in Thompson's first appeal, ruling:

REPORT AND RECOMMENDATION - 16

> Where, as here, the evidence is sufficient to support the jury's
> verdict beyond a reasonable doubt, an inconsistency between that
> verdict and an acquittal on another count is not a basis for reversal.
> [*State v.*] *Ng.* 110 Wn.2d [32], 48, [750 P.2d 632 (1988)].  Thus,
> this contention is not a basis for relief.

*State v. Thompson*, No. 25768-8-II at 15 (filed July 29, 2003).  Counsel's failure
to bring the motion did not prejudice Thompson and thus did not deny him
effective assistance of counsel.

ECF No. 18, Exh. 29.

The Washington Supreme Court also rejected Mr. Thompson's second habeas claim:

> Mr. Thompson first argues that his trial counsel was ineffective in not
> moving for a new trial after the first trial, evidently on the ground that the
> evidence and the law did not support the verdicts.  But Mr. Thompson fails to
> demonstrate any reasonable probability that such a motion would have succeeded.
> *See State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)
> (defendant must show unprofessional error and reasonable probability that, absent
> such error, outcome of proceeding would have been different).

ECF No. 18, Exh. 31, pp. 1-2.

A doubly deferential standard of review applies to habeas claims of ineffective

Federal law requires a petitioner to show that counsel's performance was so deficient that

it "fell below an objective standard of reasonableness," and that the deficient performance so

prejudiced the defense that it deprived him of the right to a fair trial, and caused the state court

proceedings to be unreasonable.  *Strickland v. Washington*, 466 U.S. 668, 686-87, 697 (1984).

Moreover, it is not enough to show that counsel's errors had "some conceivable effect on the

outcome."  *Id*. at 693.  The petitioner "must show that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceedings would have been different."  *Id*.

A doubly deferential standard of review applies to habeas claims of ineffective

assistance.  *Knowles v. Mirzayance*, __ U.S. __, 129 S. Ct. 1411, 1420 (2009).  "Judicial

scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689; *see

also Bell v. Cone*, 535 U.S. 685, 122 S. Ct. 1843, 1853-54 (2002); *Campbell v. Wood*, 18 F.3d

REPORT AND RECOMMENDATION - 17

662, 673 (9th Cir.) (en banc), *cert. denied*, 114 S. Ct. 2125 (1994).  A federal court "must indulge a presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .", and the petitioner bears the difficult burden of overcoming that presumption.  *Strickland,* 466 U.S. at 689-90.

The Washington appellate courts held that Mr. Thompson's counsel did not provide ineffective assistance of counsel when he failed to bring a motion for new trial based on inconsistent jury verdicts.  As noted above, the State tried Mr. Thompson for murder, assault, and unlawful possession of a firearm.  ECF No. 18, Exh. 1.  Because the State's theory at trial was that Mr. Thompson was the principal and murdered Julie Maroni, Mr. Thompson argues that the State's failure to prove the firearm charge was also a failure to prove an element of the murder charge.  The Washington Court of Appeals rejected this argument because an inconsistency between the verdict on one count and an acquittal on another count is not a basis for reversal where, as here, there was sufficient evidence to support the jury's verdict beyond a reasonable doubt:

> Thompson also points to the jury's acquittal on the unlawful possession of a firearm charge as showing "a distinct possibility" that the jury found Thompson guilty of shooting Maroni as an accomplice.  Appellant's Reply Br. At 5. Because the jury's reasoning inheres in the verdict, we cannot determine why the jury produced inconsistent verdicts.  But our focus in determining whether the instructional error was harmless must be on the evidence, not on the jury's decision on another charge.  As we discuss above, because here is no credible evidence that Thompson was acting as an accomplice, we are satisfied beyond a reasonable doubt that the jury verdict on the murder charge would have been the same absent the error.  *Brown,* 147 Wn.2d at 341.

ECF No. 18, Exh. 29 (internal citations omitted).

This holding is not inconsistent or contrary to federal law.  The United States Supreme Court has made it clear that inconsistent verdicts may stand when one of those verdicts is a

conviction and the other an acquittal.  *See United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932).  The underlying rationale of these cases is that the acquittal on one count may be explained as an exercise of lenity by the jury that is not necessarily grounded in its view of the evidence.  *See Dunn*, 284 U.S. at 393, 52 S.Ct. 189, 76 L.Ed. 356.  Thus, the Washington state courts' holding that Mr. Thompson's counsel did not provide ineffective assistance of counsel in failing to bring the motion is not unreasonable.

The Court concludes that the state courts' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(2).  Therefore, the undersigned recommends that Mr. Thompson's second habeas claim be denied and dismissed with prejudice.

**C.      Third Claim – Exclusion of Hearsay Statements**

In his third habeas claim, Mr. Thompson contends that the exclusion of hearsay statements from his trial violated his right to due process and a fair trial.   ECF No. 7-1, p. 7. Specifically, Mr. Thompson argues that the trial court erred when it excluded the out of court statements of Joshua Hines that Thomas Pleasant, another person present at the motel, confessed to being involved in the shooting death of Ms. Maroni and the assault of Mr. Labee.   ECF No. 7-2, p. 14.

According to unchallenged findings of the trial court as to the proposed hearsay testimony of Mr. Hines:  (1) Pleasant was at the Sherwood Inn in a room with four others during the shootings and fled on foot when detectives contacted him during a canvass of the motel; (2) Hines claimed, in a taped statement to police, that six days after the incident Pleasant made statements implicating himself in the murder of Maroni and assault of Labee; (3) Pleasant was

REPORT AND RECOMMENDATION - 19

incarcerated at the Olympic Corrections Center in Forks at the time of trial; (4) neither the State nor Thompson requested an order of transport to have Pleasant testify; and (5) Pleasant stated in a deposition that he was not involved in the murder and he had not told Hines that he was involved in the murder. ECF No. 18, Exh. 8.

The trial court conducted a lengthy pre-trial hearing on this issue, in which it considered the taped statement of Joshua Hines, testimony from Tacoma Police Detective Steve Shake, copies of police reports and other investigative materials, descriptions of the evidence and arguments presented by the parties. ECF No. 19, Exh. 43, Vols. 8, 9 and 10, pp. 342-399; 405-530.

The trial court ultimately determined that the statements of Mr. Hines would not be used at all at trial and therefore, the trial court would not permit Mr. Pleasant to be put on the stand and impeached with Mr. Hines' statements:

> And I took some time to read the confession by Jones. And there's no doubt in the Court's mind as to who was involved in this matter. Rock is Mr. Thompson, and the other individual that he was never able to name but Seraile.
>
> So you have the Jones person who puts everybody out there in the parking lot as to who did the shooting and who was chasing the girl and where the other shot was heard.
>
> You have the Brown person, Sharon, talking about she bringing the gun over, and Rock and Jones and the other person being in the room. And they walked outside and within seconds there's shooting.
>
> You have Jones that puts everybody in the picture. And you have very strong information from Sharon Brown as to who got the gun and how they walked out there and how they came back in, or at least Jones came back in.
>
> Pleasant is there at the place of the incident. But I have to look at the whole picture here. And after considering that, I don't think that there's enough linkage – strong facts – circumstances that would link this person Pleasant to the shooting. Notwithstanding the fact that he's there. I've gone through those factors and I've thought about them, and I can't be convinced that he is – that

REPORT AND RECOMMENDATION - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

there's truth in what he's saying.  Plus the fact that he is available.  And that
would not comply with the 804.  . . .

> I don't find Hine's statement to be truthful, and for that reason I won't
> allow Mr. Pleasant to be put on the stand and impeached with that statement.  And
> the ruling of the Court would be that those statements that are brought on by the
> declarant, by Mr. Hines, will not be used at all in this trial.

*Id.*, Volume 10, at 530-532.  Following its oral ruling, the trial court issued its Findings and

Conclusions in a 12 page written order:

> 12.     The evidence proffered by the defense does not include a sufficient
> linkage between Thomas Pleasant and the shootings.  The most that has been
> established is that Thomas Pleasant was present in the motel at the time of the
> shootings.

> 13.     Under ER 804(b)(3) the proponent of a statement against penal
> interest must establish that the declarant is unavailable.  Because Pleasant is
> incarcerated in a state prison, he is available by order of transport at the request of
> either party.  The defense has made no showing that Pleasant would exercise his
> Constitutional right to remain silent if called to the stand.  Therefore Pleasant is
> not unavailable as required by this evidence rule.

> 14.     Under ER 804(b)(3) a statement tending to expose the declarant to
> criminal liability is also not admissible unless corroborating circumstances clearly
> indicate its trustworthiness.  The court has considered the circumstances of the
> declarations attributed to Pleasant in light of the nine part reliability analysis from
> <u>State v. Whelchel</u>.  A brief analysis of the evidence in light of the nine factors
> follows.  To the extent the court does not here specifically adopt a position with
> respect to these factors, the court finds persuasive the arguments advanced by the
> State at the hearing on this motion and adopts those arguments as additional
> reasons the statements are not reliable.

> > i.      Pleasant had an apparent motive to lie in that he is a convicted
> > criminal who because of his casual relationship with Hines would
> > be more likely seek to enhance his stature as a dangerous character.
> > His statements about the circumstances of the shooting are
> > suggestive of bravado and an attempt to impress upon Hines that
> > he is a dangerous person who is capable of shooting another man
> > over money owed.

> > ii.     The general character of Pleasant is far from trustworthy.  He was
> > wanted for a shooting in Lakewood and had attained four prior

REPORT AND RECOMMENDATION - 21

felony convictions by age 22.  There is nothing in his character that suggests veracity.

iii.  There was no evidence presented that anyone except Hines heard the alleged statements from Pleasant.  The only evidence on this subject was Hines' claim that others were present.  However, Kortright was interviewed on July 15 and said nothing about the alleged statements during his interview.

iv.  The transcript of the interview reveals that Pleasant did not spontaneously bring up the shooting.  Instead, Hines brought up the subject and allegedly asked Pleasant questions.  In addition, Hines reports that Pleasant's demeanor while talking about the shooting was not serious.  He said that Pleasant was just making fun of the whole thing.  This further indicates that Pleasant was boasting when he allegedly claimed credit for the shooting.

v.  The relationship between Hines and Pleasant and the timing of the statements weighs against reliability.  Hines was an acquaintance and was precisely the kind of person with whom Pleasant might seek to enhance his criminal reputation rather than reveal confidences.  The content of the statements shows that Pleasant was taking credit for a violent debt collection and thus would have been impressing on Hines that those who owe him money should beware.  Other evidence in the case highlights these claims as fabrications because Calvin Labee was living in Hawaii at the time of the incident and had only been in town since July 4.  There is no evidence he knew Pleasant much less owed him money.

vi.  The statements attributed to Hines are an express assertion about past facts.  However, because so many of the facts are demonstrably inaccurate, there is nothing to show reliability.

vii.  The statements allege a claim of personal knowledge but the content of the statement demonstrates a lack of knowledge.  Pleasant allegedly claimed that he alone committed the shootings with a single gun when the evidence from the scene shows that there were two shooters using two different guns.

viii.  The statements display a faulty recollection of the facts that is attributable to either intentional misstatement on the part of Pleasant or fabrication on the part of Hines.  With the number of facts wrongly stated and the statements having been allegedly made only five days after the shooting, the statements are faulty

REPORT AND RECOMMENDATION - 22

regardless of whether the reason is boasting by Pleasant or lying by Hines.

    ix.    The circumstances of the statements indicate that either the declarant misrepresented his involvement or that the reporter of the statements misrepresented the declarant's involvement. For instance, throughout the statements, the actions attributed to Pleasant paint him as a daring and dangerous character. If believed, Pleasant would be seen as a man who coolly faced down another man beating him in a quick-draw and shooting him face to face in the chest. This allegation is not trustworthy because no gun was found in Calvin Labee's possession nor any area nearby where he might have gone during the shooting. Also, Calvin Labee was shot from the back in the buttocks rather than from the front in the chest.

15.    Under *State v. Mak*, the defense bears the burden of proof to establish a foundation that there is a sufficient link between other suspect evidence and the murder. The defense in this case has not met its burden of proof.

ECF No. 18, Exh. 42, pp. 9-12.

The Washington Court of Appeals rejected Mr. Thompson's claim that the trial court

erred when it excluded Mr. Pleasant's out of court statement:

Thompson asserts that the trial court erred when it excluded the out of court statement that Thomas Pleasant, another person present at the motel, allegedly made to Joshua Hines. He argues that the hearsay was admissible under ER 804(b)(3) as a statement against interest because Pleasant was unavailable to testify.

We review a trial court's refusal to admit evidence under ER 804(b)(3)'s hearsay exception for an abuse of discretion. *State* v. *McDonald,* 138 Wn.2d 680, 693, 981 P.2d 443 (1999). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. *State* v. *Brown,* 132 Wn.2d 529, 572, 940 P.2d 546 (1997). A hearsay statement against the declarant's penal interest may be admissible (1) if the declarant is unavailable to testify; (2) the statement exposes the declarant to criminal liability and a reasonable person in the same position would not have made the statement unless convinced of its truth; and (3) corroborating circumstances clearly indicate the statement's trustworthiness.

ER 804(b)(3); *State v. Whelchel,* 115 Wn.2d 708, 715-16, 801 P.2d 948 (1990). The trial court made the following unchallenged findings as to this

REPORT AND RECOMMENDATION - 23

evidence: (1) Pleasant was at the Sherwood Inn in a room with four others during the shootings and fled on foot when detectives contacted him during a canvass of the motel; (2) Hines claimed, in a taped statement to police, that six days after the incident Pleasant made statements implicating himself in the murder of Maroni and assault of Labee; (3) Pleasant was incarcerated at the Olympic Corrections Center in Forks at the time of trial; and (4) neither the State nor Thompson requested an order of transport to have Pleasant testify. *See State v. Hill,* 123 Wn.2d 641, 644, 870 P.2d 313 (1994) (unchallenged findings of fact are verities on appeal). As Thompson acknowledged, Pleasant stated in a deposition that he was not involved in the murder and he had not told Hines that he was involved in the murder.

In seeking admission of Hines' testimony about Pleasant's incriminating statement, Thompson argued that the unavailability requirement was met because Pleasant would refuse to testify by denying involvement. The trial court disagreed, ruling that the evidence was not admissible under ER 804(b)(3) because (1) Pleasant was available as a witness; and (2) the court had concerns about the reliability of the hearsay. Thompson challenges this ruling.

Thompson cites *State* v. *Roberts,* 142 Wn.2d 471, 491, 14 P.3d 713 (2000), as authority that Pleasant was legally unavailable because witnesses who refuse to testify by invoking their privilege against self incrimination are unavailable. But in *Roberts,* the declarant asserted the Fifth Amendment when called to testify. 142 Wn.2d at 491. Here, Pleasant was not transported from prison to testify and, thus, never had an opportunity to assert the Fifth Amendment or otherwise testify. The mere possibility that Pleasant might have asserted his Fifth Amendment right against self incrimination is insufficient to establish unavailability under ER 804(b)(3). Also citing to *Roberts,* Thompson claims that there is a presumption of admissibility, not exclusion, when statements are against the declarant's interest and offered by the defense. But *Roberts* does not support this contention. In *Roberts,* the declarant was unavailable, and the reviewing court found that statements were reliable. 142 Wn.2d at 497.

Here, the trial court found that the statements were not reliable after considering the nine factors for assessing reliability. Thompson does not challenge any of the findings or conclusions regarding reliability or attempt to show that the statements were reliable. Unchallenged findings are verities on appeal. *Hill,* 123 Wn.2d at 644. Thus, Thompson has not shown that the trial court erred in excluding this evidence.

ECF No. 18, Exh. 8 (Footnotes omitted).

When Mr. Thompson raised the same issue in his personal restraint petition, the

Washington Court of Appeals again rejected it:

REPORT AND RECOMMENDATION - 24

1

2

3

4

5

6

       In a supplemental brief, petitioner argues that the trial court erred in not allowing Joshua Hines to testify that Robert Pleasant had confessed to the killing. We disagreed with this same claim in petitioner's direct appeal.  *State v. Thompson, supra* at 19-25.  But petitioner argues that *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), compels a different result. We disagree.  Here the trial court found that the proffered evidence was unreliable and excluded it on that basis.  *Crawford* broadened the scope of excluded evidence to that of an unavailable testimonial witness not subject to cross-examination.  *Crawford* is simply irrelevant to petitioner's claim. (Emphasis added).

7

ECF No. 18, Exh. 29, p. 5.

8

9

      The Washington Supreme Court Commissioner also rejected Mr. Thompson's third

10

habeas claim:

11

12

13

14

15

16

       Mr. Thompson further contends that the trial court erroneously disallowed a certain witness from testifying that someone else had confessed to the killing. The Court of Appeals rejected this argument on direct appeal, but Mr. Thompson argues that a different result is dictated by *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).  But Mr. Thompson does not demonstrate the relevance of *Crawford* to his argument.  The trial court excluded the testimony because it was unreliable.  *Crawford*, which concerns the right of confrontation and the admissibility of testimonial evidence not previously subject to cross-examination, is immaterial to Mr. Thompson's argument.  In excluding unreliable testimony favorable to Mr. Thompson, the trial court did not deprive him of his right to confront witnesses against him.

17

18

ECF No. 18, Exh. 31.

19

      It is clearly established federal law, as determined by the Supreme Court, that when a

20

hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense,

21

the exclusion of that statement may rise to the level of a due process violation.  *Chambers v.*

22

*Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).  "The Supreme Court has

23

made clear that the erroneous exclusion of critical, corroborative defense evidence may violate

24

both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to

25

present a defense."  *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir.2001) (*citing*

26

REPORT AND RECOMMENDATION - 25

*Chambers*, 410 U.S. at 294, 93 S.Ct. 1038).  *See also, Green v. Georgia* (1979) 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (judge excluded on hearsay grounds testimony that co-perpetrator shot victim after sending Green away on errand) and *Chia v. Cambra* (9th Cir.2004) 360 F.3d 997 (co-perpetrator told law enforcement that Chia not involved in murders; statement wrongfully excluded on hearsay grounds).

Mr. Thompson's case, however, is distinguishable.  If true, Mr. Pleasant's alleged statement that he was the shooter inculpates him while exculpating Mr. Thompson.  However, this hearsay statement did not enjoy the indicia of reliability marking the statements of the declarants in *Chambers* and *Chia*.   Mr. Pleasant's alleged statement to Mr. Hines was not spontaneous.  Rather, it was a single statement made in response to Mr. Hines' questioning.  The statement was made six days after the event but contained several faulty facts.  The statement was not made to law enforcement and it was not consistent with observations of other witnesses, police officers and forensic details of the crimes.  When his deposition was taken, Mr. Pleasant denied ever making the statement.  Moreover, Mr. Pleasant was available to testify but neither party requested that he be transported from prison to do so.  Therefore, he never had an opportunity to become legally unavailable by invoking his privilege against self-incrimination.  The state courts correctly found that Mr. Thompson's belief that Mr. Pleasant would have done so had he been called was insufficient to make the hearsay admissible under Washington's Rule 804(b0(3) hearsay exception.[3]

The undersigned concludes that the trial court did not err when it found that the statements were not reliable.  The trial court held a lengthy hearing, heard testimony, reviewed

---

[3] Rule 804(b)(3) of the Federal Rules likewise requires the unavailability of the declarant and corroborating circumstances clearly indicating the trustworthiness of the statement.

REPORT AND RECOMMENDATION - 26

police reports, listened to tape recorded interviews, and heard arguments of counsel. It applied a nine factor test for assessing reliability and set forth its findings and conclusions in a twelve page written opinion. Mr. Thompson does not challenge any of the findings or conclusions or attempt to show that the statements were reliable.

The Court concludes that the state courts' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(2). Therefore, the undersigned recommends that Mr. Thompson's third habeas claim be denied and dismissed with prejudice.

**D.      Fourth Claim – Court Instruction on Jury Unanimity**

In Mr. Thompson's fourth habeas claim, he argues that the trial court's instruction on jury unanimity violated his right to due process. ECF No. 7-1, p. 9. In his supporting brief, Mr. Thompson explains that the question presented to this Court is "whether a first degree murder conviction under jury instructions that did not require agreement on whether Thompson was guilty of premeditated murder or felony murder, is unconstitutional." ECF No. 7-2, p. 19.

The record reflects that Jury Instruction No. 37 provided instructions to the jury regarding completion of verdict forms as to the crime of murder in the first degree. That instruction provides, in relevant part:

> When completing the verdict forms for Count One, you will first consider the crime of Murder in the First Degree as charged in Count One. You need not unanimously agree on a verdict for one or the other of the two alternatives for Count One, provided that you unanimously agree on a verdict for the crime of Murder in the First Degree. If you unanimously agree on a verdict, you must fill in the blank provided in Verdict Form A the words "not guilty" or the word "guilty" according to the decision you reach. If you unanimously agree on a verdict of "guilty" on Verdict Form A, do not use the form entitled "Interrogatories" and do not consider the lesser crime of Murder in the Second Degree. If you cannot unanimously agree on a verdict as to Murder in the First Degree, do not fill in the blank provided in Verdict Form A.

REPORT AND RECOMMENDATION - 27

*See* ECF No. 18, Exh. 41.

The Washington Court of Appeals rejected Mr. Thompson's claim:

> Thompson claims trial court error in failing to require a unanimous verdict as to the first degree murder charge. We agree with the State that as sufficient evidence supported both alternative means – felony murder with robbery as the predicate offense and premeditated murder – the absence of a unanimity instruction as to these two alternative means does not mandate reversal. Defendants have a right to a unanimous jury verdict. WASH. CONST. art. 1 § 21; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). Where the court provides instructions as to alternative means of committing a crime, the jury must unanimously agree as to the means the defendant employed. *Ortega-Martinez*, 124 Wn.2d at 707. If the jury verdict does not indicate the means supporting the conviction and the evidence is insufficient as to one of the alternative means, we must reverse the conviction. *Ortega-Martinez*, 124 Wn.2d at 708. But even absent a unanimity instruction, we will uphold the verdict if sufficient evidence supports each alternative means. *Ortega-Martinez*, 124 Wn.2d at 707-08.
>
> Because, as discussed above, sufficient evidence supports both the felony murder and the premeditated murder alternatives, the lack of a unanimity instruction does not require reversal.

ECF No. 18, Exh. 8, pp. 13-14. (Unpublished Opinion, *State v. Thompson*, Washington Court of Appeals Cause No. 25768-8-II).

As noted above, a claim that a jury instruction is incorrect under state law or that the state court failed to properly instruct the jury is not a basis for habeas corpus relief. *Estelle*, 502 U.S.at 68-72; *Miller*, 757 F.2d at 993; *Mitchell*, 878 F.2d 318. Instead, the petitioner must prove the failure to properly instruct the jury violated some right guaranteed defendant by the Fourteenth Amendment, and review is limited to whether an allegedly defective jury instruction "so infected the entire trial that the resulting conviction violates due process."" *Carriger*, 971 F.2d at 334 (quoting *Cupp*, 414 U.S. at 147).

REPORT AND RECOMMENDATION - 28

The United States Supreme Court "has never held jury unanimity to be a requisite of due process of law." *Johnson v. Louisiana*, 406 U. S. 356 (1972).  Rather, the Court has expressly stated that "[i]n criminal cases due process of law is not denied by a state law … which dispenses with the necessity of a jury of twelve, or unanimity in the verdict."  *Johnson v. Louisiana*, 406 U.S. at 359.   Thus, Mr. Thompson's claim that the trial court's instruction on jury unanimity violated his right to due process is not based on clearly established federal law.

Furthermore, Mr. Thompson has shown no actual or substantial prejudice as a result of the instruction.  *See Brecht v. Abrahamson,* 507 U.S. at 637.  As noted by the Washington Court of Appeals, there was ample evidence to convict him on the felony murder and the premeditated murder alternatives and therefore, the lack of unanimity instruction did not require reversal.

The Court concludes that the state courts' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(2).  Therefore, the undersigned recommends that Mr. Thompson's fourth habeas claim be denied and dismissed with prejudice.

**E.      Fifth Claim – Insufficient Evidence to Support First Degree Murder and Assault**

In his fifth habeas claim, Mr. Thompson contends that the evidence presented at his trial was constitutionally insufficient to support a first degree murder and assault conviction.   ECF No. 7-1, p. 11.

When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the court itself believes the evidence establishes guilt.  "Instead, the relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original).  The court must "view the record as a whole in the light most

REPORT AND RECOMMENDATION - 29

favorable to the prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.), *cert. denied*, 489 U.S. 1077 (1990). The court's review is limited to "record evidence." *Herrera v. Collins*, 113 S. Ct. 853, 861 (1993). Review is sharply limited, and the Court owes great deference to the trier of fact. *Wright v. West*, 112 S. Ct. 2482, 2492, (1992). A sufficiency of evidence review is undertaken with reference to the elements of the criminal offense as set forth by state law. *Jackson*, 443 U.S. at 324 n. 16.

Mr. Thompson's convictions are now presumptively lawful and the burden is on him in this § 2254 proceeding to establish that (1) no rational trier of fact could have found the elements of the crimes beyond a reasonable doubt, in accordance with the *Jackson v. Virginia* standard, and (2) that the Washington Court of Appeals' adjudication of his *Jackson* claim was either contrary to or an unreasonable application of *Jackson*, for purposes of § 2254(d).

The Washington Court of Appeals held that the evidence was sufficient to establish the elements of the charged offenses under Washington law:

> Thompson argues that the evidence was insufficient to prove that he acted with knowledge that his actions would promote or facilitate the crimes and that he encouraged or solicited another to commit them. In his pro se supplemental brief, Thompson also argues that the evidence was insufficient to support the murder conviction and the jury instructions on premeditated murder.

> A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. *State v. Salinas,* 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We examine the record to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the State and viewing circumstantial and direct evidence as equally reliable. *State* v. *Kleist,* 126 Wn.2d 432, 435, 895 P.2d 398 (1995); *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Credibility determinations rest solely with the trier of fact. *State* v. *Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

> To prove first degree felony murder, the State had to produce evidence that Thompson committed or attempted to commit first or second degree robbery

REPORT AND RECOMMENDATION - 30

and in the course or furtherance of such crime or in immediate flight therefrom, he or another participant caused the death of Maroni. RCW 9A.32.030(1)(c). "A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone." RCW 9A.56.190.

The State produced evidence that Thompson and Seraile discussed taking the Cadillac and asked Jones to obtain another gun for them so that Seraile could arm himself during the robbery. According to Jones, Thompson and Seraile were going to use the gun "to rob dude for his car." 20 RP at 1515. A short time later, Thompson and Seraile approached Labee and Maroni, and Thompson shot at Maroni multiple times; she died from multiple gunshot wounds. This evidence supports the felony murder alternative.

To prove premeditated first degree murder, the State had to produce evidence that Thompson or an accomplice, with premeditated intent to cause the death of another person, caused Maroni's death. RCW 9A.32.030(1)(a). The law permitted the State to prove premeditation through the use of circumstantial evidence that was substantial and capable of supporting reasonable inferences. *State* v. *Pirtle,* 127 Wn.2d 628, 643, 904 P.2d 245 (1995).

Premeditation is the deliberate formation of and reflection upon the intent to take human life and involves the mental process of thinking beforehand, deliberation, reflection, weighing, or reasoning for a period of time, however short. *Pirtle,* 127 Wn.2d at 644. Four characteristics of the crime are relevant to establish premeditation: (1) motive; (2) procurement of a weapon; (3) stealth; and (4) the method of killing. *Pirtle,* 127 Wn.2d at 644.

There is sufficient evidence of premeditation here. Thompson's stated motive was to rob Labee of his Cadillac. Thompson had a .45 caliber gun and he procured a second gun for Seraile for use in the robbery. The method of killing supports premeditation because Thompson ran after Maroni while shooting at her and continued to shoot while she was lying motionless on the ground. The forensic evidence also showed that Maroni received a minimum of six gunshot wounds.

With regard to the assault conviction, the State also argues that there is sufficient evidence to prove that Thompson knew he was facilitating an assault when he obtained a gun for Seraile. Thompson claims that the State offered no evidence of the link between the crime and his accomplice status.

A person is guilty of first degree assault if, with intent to inflict great bodily harm, he assaults another with a firearm or any deadly weapon or by any

REPORT AND RECOMMENDATION - 31

force or means likely to produce great bodily harm or death.  RCW
9A.36.011(l)(a).  The evidence here was sufficient to prove this crime.

Thompson told Seraile he wanted to take the Cadillac; Thompson asked
Jones for a gun for use in the robbery and gave the gun to Seraile; both Thompson
and Seraile eventually possessed guns; and they left the motel room together.
When the men approached Labee and Maroni, they began shooting.  This
evidence clearly supports an inference that Thompson and Seraile planned to
inflict great bodily harm on Labee and Maroni in an effort to steal the Cadillac.

Because the State introduced sufficient evidence to prove all elements of
assault based on accomplice liability, we remand the assault conviction for a new
trial. (Footnotes omitted).

ECF No. 18, Exh. 8, pp. 10-13.

After the Washington Court of Appeals' remand on the first degree assault conviction,

Mr. Thompson was tried and again convicted of first degree assault.  ECF No. 18, Exh. 12.

Following Mr. Thompson's retrial, the Washington Court of Appeals held as follows:

Thompson alleges that insufficient evidence supported his conviction for
first degree assault as an accomplice. This position is meritless.

The evidence here, taken in the light most favorable to the State, is
sufficient to prove all elements of first degree assault based on accomplice
liability.  Thompson told Seraile that he wanted "to take" the Cadillac.  Thompson
asked Jones for a gun to use in the robbery and gave the gun to Seraile; both
Thompson and Seraile eventually possessed guns.  Both Thompson and Seraile
left the motel room together.  When they approached Labee and Maroni, they
began shooting.

As well, in the previous appeal, we already dealt with Thompson's
argument "that the evidence was insufficient to prove that he acted with
knowledge that his actions would promote or facilitate the crimes and that he
encouraged or solicited another to commit them."  *Thompson* 2003 Wash. App.
LEXIS 1712, at *12-*13 (2003).  And we decided that the evidence was sufficient
to prove the crime of first degree assault.  *Thompson*, 2003 Wash. App. LEXIS
1712, at *17.  Thus, that decision is the law of the case; and, in any event,
sufficient evidence existed to prove the crime of first degree assault in the second
trial.

ECF No. 18, Exh. 17.

REPORT AND RECOMMENDATION - 32

As noted above, the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *Jackson*, 443 U.S. at 319. Viewing the record as a whole in the light most favorable to the prosecution and for the reasons set forth in the state courts' decisions, the undersigned finds that the evidence was sufficient to convict Mr. Thompson of first degree murder and assault.

The Court concludes that the state courts' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(2).  Therefore, the undersigned recommends that Mr. Thompson's fifth habeas claim be denied and dismissed with prejudice.

**F.**     **Sixth Claim  - Admission Of Other Crimes Evidence**

In his first trial, Mr. Thompson was convicted of the first-degree murder of Julie Maroni and first-degree assault of Calvin Labee.  On appeal, the Washington Court of Appeals affirmed his first-degree murder conviction, but reversed the first-degree assault conviction based on instructional error and remanded for a new trial on that charge.  Mr. Thompson was subsequently re-tried on the crime of first-degree assault and was again convicted of that charge.

In his sixth claim for habeas relief, Mr. Thompson contends that the admission of evidence pertaining to the death of Julie Maroni that was presented at his re-trial for first-degree assault was an abuse of discretion that rendered his trial fundamentally unfair and denied him due process.  He argues that such evidence generated unfair prejudice that substantially outweighed any prejudicial value:

> Having been charged as an accomplice to the crime of Assault in the First Degree, the only issue to be resolved by the jury in Thompson's second trial was whether he possessed the requisite mens rea of knowledge of the principles [sic] intent to commit the crime charged.

REPORT AND RECOMMENDATION - 33

1

2

3

4

5

           To do this, over the objection of Thompson, the State sought to introduce evidence of the death of Julie Maroni for which Thompson was previously convicted of committing.  This evidence included, the particular type of handgun allegedly used in the commission of the murder, spent shell casings recovered from the crime scene, live video and still photographs depicting the condition in which the body of Maroni was found at the crime scene.  In addition, the State sought to admit the former trial testimony of Ramon Jones and the medical examiner, both testifying as to certain aspects of the murder.

6

7

ECF No. 7-2, p. 27.[4]

8

9

           During Mr. Thompson's re-trial on the charge of first-degree assault, the trial court

10

discussed with the parties whether the subject of the death of Julie Maroni should be admitted as

11

evidence of Mr. Thompson's knowledge relating to the assault of Calvin Labee.  ECF No. 18,

Exh. 44, Vol. 3 at 106-122.  The trial court orally ruled as follows:

12

13

14

15

           THE COURT:  Okay. Here's where we're going to go at this point in time so we can move forward:  **I'm staying with my prior ruling that there is to be no mention or even suggestion that there was a prior trial** unless one of the two of you brings a motion outside the presence of the jury for me to reconsider that.

16

17

18

19

           With respect to the evidence of Mr. Thompson, either the Judgment and Sentence or conviction or something with respect to him having previously been convicted of the murder, I am concerned that that would be highly prejudicial to the defendant, and at this time I am determining that that is not to go in.  Again, I will reconsider that if the State chooses to bring a motion outside the presence of the jury.

20

21

22

23

24

           I think we should all consider the drafting of a limiting instruction to give to the jury as part of the final packet of instructions, should this ruling not be modified during the course of the trial, that specifically instructs the jury not to speculate with regard to any other charges that may have been brought or could have been brought or however it is that we think is best to word it.  And I'm open to suggestions from both Mr. Schacht and Mr. Thompson in that regard **so that it's clear in the instructions that the jury is only to consider accomplice**

25

26

---

[4] Although Mr. Thompson frames his sixth habeas claim as an issue implicating the Fifth and Fourteenth Amendments to the United States Constitution, he states that the "**principal issue is the scope of a trial court's discretion under Evidence Rule 403**. . ."  ECF No. 7-2, p. 57 (emphasis added).

REPORT AND RECOMMENDATION - 34

**liability, assault first degree with the victim Labee and nothing else for purposes of its deliberation**. Okay?

Anything else before we bring the jury out?

MR. SCHACHT: Well, I guess the ruling that we need from the Court is that it is permissible for the State to introduce some evidence of the murder of Julie Maroni as part of the evidence of the knowledge required for accomplice liability.

THE COURT:  I believe the circumstances surrounding the entire event **are necessary for the jury to understand what happened on that particular day and for them to reach a conclusion with respect to accomplice liability for assault in the first degree, and so I will allow the -- some evidence of the murder but again we need to tread lightly there**.

*Id*. at 122-124 (emphasis added).

Subsequently, the trial court issued the following jury instruction:

Evidence introduced in this case on the subject of the death of Julie Maroni has been admitted for a limited purpose.  The evidence has been admitted as evidence of the knowledge of the participant or participants in the assault of Calvin Labee. **You must not consider this evidence for any other purpose**.

*See* ECF No. 47, Supplemental Exhibit 7 (Court's Instructions to the Jury) (emphasis added).

In his rebuttal closing argument, the deputy prosecutor stated the following:

No. 1 is this:  You heard testimony touching on the death of Julie Maroni. You heard testimony about the involvement of Duane Seraile.  You heard testimony about the involvement of Sharon Brown.  You heard testimony about the involvement of Raymond Jones.  You heard in the case of Raymond Jones' specific testimony about charges that were brought against him, about a plea bargain that ended up with him testifying.  The thing that I want to urge you to do is don't get distracted by asking yourselves what about Duane Seraile?  What happened to Duane Seraile, or vice versa.  What about Sharon Brown?  Was she ever charged with anything?  What about Mellisa Arey?  Was she charged or could she have been charged with anything?  The issue in this case is guilt or innocence of Brenton Thompson for assault in the first degree.  And I urge you not to speculate or allow yourself to get distracted by asking yourselves a lot of questions that clearly you wouldn't be human if you weren't wondering about them, and all I'm saying to you is yeah, wonder all you want, but focus in on the issue that's presented to you in this case which is the guilt or innocence as an accomplice in assault in the first degree.

REPORT AND RECOMMENDATION - 35

**Don't speculate about what, if any, charges were brought as a result of the death of Julie Maroni or against whom they might have been brought. Don't allow yourselves to be distracted by that**. The jury instruction touches on this where it says and I won't quote it for you, you'll see it in the packet that the evidence that was introduced regarding the death of Julie Maroni is introduced for the limited purpose because it does have some bearing on the issue of accomplice liability and the knowledge requirement that goes along with accomplice liability for the assault of Calvin Labee.  So under that circumstance, look at that evidence, but use it for the purpose for which it's permitted for you to be used because it does indicate to you in the sense of indirect or circumstantial evidence, what the plan was when the individuals left the room to commit this robbery, this carjacking.

*See* ECF No. 18, Exh. 44, Volume 9 at 880-882 (emphasis added).

The Washington Court of Appeals held that the trial court did not abuse its discretion when admitting evidence of Julie Maroni's death when Mr. Thompson was re-tried for first-degree assault:

> Thompson argues that the trial court abused its discretion in admitting evidence regarding Maroni's shooting. "Such evidence, as was admitted here, generated unfair prejudice that substantially outweighed any probative value." [10] Statement of Additional Grounds (SAG) at 7.  Specifically, he argues that the trial court erred in admitting the following evidence:
>
>> Through the testimony of Ramon Jones, Dr. Howard and Robert Creek, the State offered to the jury evidence that Julie Maroni was shot, that she was shot with a particular type of handgun, and that the ballistic evidence that was found at her body was different that [sic] than the ballistic evidence that was found relating to the shooting of Calvin Labee.  In addition, the State introduced a video tape [sic] and photographs of the crime scene, all in contention that this evidence "goes directly to the issue of accomplice liability." [5]

---

[5] Forensic officer Robert Creek of the City of Tacoma Police Forensics Services Unit and Dr. John Howard provided testimony for the State during Mr. Thompson's re-trial.  ECF No. 18, Exh. 44, Vol. 3 at 169-215; Vol. 7 at 640-652.  Although he testified during Mr. Thompson's first trial (ECF No. 47, Suppl. Exh. 43, Vol. 20 at 1480-1565; Suppl. Exh. 43, Vol. 21 at 1575-1693), Raymond Jones refused to testify during Mr. Thompson's re-trial.  ECF No. 18, Exh. 44, Vol. 6 at 590-92.  However, Mr. Jones's prior testimony from the first trial was read to the jury during the re-trial.  *See id*. at 594, 610-613, and Vol. 7 at 632-33.  The deputy prosecutor summarized the State's evidence during closing argument (ECF No. 18, Exh. 44, Vol. 9 at 840-866) and in his rebuttal argument.  *See id.* at 880-889.

REPORT AND RECOMMENDATION - 36

SAG at 5.

Again, we review a trial court's decision to admit or exclude evidence for abuse of discretion. *DeVincentis,* 150 Wn.2d at 17 (2003); *see also Finch,* 137 Wn.2d at 810 (1999). A court abuses its discretion when it exercises its discretion on manifestly unreasonable or untenable grounds or reasons. *Finch,* 137 Wn.2d at 810. We hold that the trial court did not abuse its discretion.

The State sought to introduce this evidence partly on the ground "that three individuals were setting out to commit a robbery and they've got two guns between the three of them, and the two guns are each fired at different people during the course of the robbery. And that goes directly to the issue of the accomplice liability." 3 Report of Proceedings (RP) (Nov. 30, 2004) at 117. "They were acting in concert in the motel room, as they left the motel room, exited the motel. They're still acting in concert, and as the shooting starts, they're still acting in concert. That's in essence, the State's theory of the case." 3 RP at 127.

Even so, the State disclosed, "I'm not indicating to the Court that I intend to produce all the evidence that I would be producing if the jury were called upon to decide guilt or innocence on premeditation or intent to kill or the other issues that go along with the murder." 3 RP at 116.

The trial court permitted the State to introduce this evidence, saying:

> I believe the circumstances surrounding the entire event are necessary for the jury to understand what happened on that particular day and for them to reach a conclusion with respect to accomplice liability for assault in the first degree, and so I will allow the -- some evidence of the murder but, again, we need to tread lightly there.

3 RP at 124. And, the trial court noted:

> **I'm staying with my prior ruling that there is to be no mention or even suggestion that there was a prior trial** unless one of the two of you brings a motion outside the presence of the jury for me to reconsider that.
> With respect to the evidence of Mr. Thompson, either the Judgment and Sentence or conviction or something with respect to him having previously been convicted of the murder, I am concerned that that would be highly prejudicial to the defendant, and at this time I am determining that that is not to go in.

3 RP at 122-23.

REPORT AND RECOMMENDATION - 37

1

2

3

Based on this record, we hold that the trial court did not abuse its discretion.  The trial court admitted the evidence as "necessary for the jury to understand."  3 RP at 124.  Thus, the trial court's decision was not manifestly unreasonable or based on untenable grounds or reasons.

4

5

[10] Thompson cites to ER 401 and ER 403. [Footnote by the Court.]

*See* ECF NO. 18, Exh. 17, pp. 10-12 (emphasis added).

6

7

8

9

10

11

12

13

14

Mr. Thompson raised the same claim again in his most recent personal restraint petition in the Washington State courts.   ECF No. 47, Suppl. Exh. 1.  The Acting Chief Judge of the Washington Court of Appeals did not re-address Mr. Thompson's sixth claim, noting that his arguments regarding that claim had already been considered and rejected in his second appeal under Washington Court of Appeals Cause No. 32590-0-II, at 10-14.  ECF No. 47, Suppl. Exh. 4.  When Mr. Thompson appealed the dismissal of his personal restraint petition to the Washington Supreme Court, that Court's Commissioner stated the following:

15

16

17

18

19

20

21

22

Mr. Thompson argues that the superior court on retrial of the assault charge erroneously admitted evidence of the death underlying his murder conviction.  He also contends that the superior court's limiting instruction on that evidence – informing the jury that the evidence was admitted only to prove the participants' knowledge of the assault – relieved the State of its burden of proving every element.  But as indicated, the Court of Appeals considered and rejected these arguments on the merits on direct appeal.  Mr. Thomson urges that he did not argue these issues on appeal specifically on federal constitutional theories.  He appears to argue that admission of the evidence of the death violated due process principles because the superior court did not sufficiently weigh probative value against prejudicial effect.  And he claims a due process violation in the superior court's limiting instruction.  But on appeal he challenged the limiting instruction precisely on the ground that it relieved the State of the burden of proving every element.

23

ECF No. 47, Suppl. Exh. 6 at 1-2.

24

25

26

 "[A] federal habeas court may not prescribe evidentiary rules for the states."  *Swan v. Peterson*, 6 F.3d 1373, 1382 (9th Cir. 1993).  Alleged errors in the admission of the evidence are

REPORT AND RECOMMENDATION - 38

generally a matter of state law and are not cognizable in a federal habeas corpus proceeding. *Estelle*, 502 U.S. at 67; *Middleton*, 768 F.2d 1083, 1085 (9th Cir. 1985). Even if there is an error of state law, that does not equal to federal constitutional error. *Romano v. Oklahoma*, 512 U.S. 1, 10 (1994); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Jammal v. Van De Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). "Claims of inadmissibility of evidence are cognizable in habeas corpus proceedings only when admission of the evidence violated the defendant's due process rights by rendering the proceedings fundamentally unfair." *Hamilton v. Vasquez*, 17 F.3d 1149, 1159 (9th Cir.), *cert. denied*, 512 U.S. 1220 (1994); *see also Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990); *Bueno v. Hallahan*, 988 F.2d 86, 87 (9th Cir. 1993); *Jammal v. Van De Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). If admission of the evidence violated due process, the Court must determine whether the error caused actual and substantial prejudice. *Brecht*, 507 U.S. at 637-39.

As was previously noted, although Mr. Thompson framed his sixth habeas claim as one implicating the Fifth and Fourteenth Amendments to the United States Constitution, he also states that the "**principal issue is the scope of a trial court's discretion under Evidence Rule 403**. . ." ECF No. 7-2, pp. 26-27 (emphasis added). As re-phrased, the issue alleges only a state law issue, *i.e,* that the trial court improperly admitted evidence under Evidence Rule 403.

The erroneous admission of evidence is not grounds for federal habeas relief unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir.1999); *Colley v. Summer*, 784 F.2d 984, 990 (9th Cir.1986), *cert. denied*, 479 U.S. 839 (1986). Failure to comply with State rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Henry*, 197 F.3d at

REPORT AND RECOMMENDATION - 39

1031; *Jammal*, 926 F.2d at 919.  While adherence to State evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when State standards are violated; conversely, State procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness.  *See Jammal*, 926 F.2d at 919 (*citing Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir.1983), *cert. denied*, 469 U.S. 838 (1984)).

The State court determined that evidence pertaining to the death of Julie Maroni could be introduced at Mr. Thompson's re-trial for first-degree assault, but that such evidence was admissible only because it was "necessary for the jury to understand" the circumstances of what happened that day.  In addition, the jury was given an instruction directing them to view the evidence for no reason other than that for which it was proffered.  There is nothing before the Court to suggest that the admission of this evidence, for a limited purpose, resulted in the denial of a fair trial.

The decision by the Washington Court of Appeals on Mr. Thompson's sixth habeas claim was neither manifestly unreasonable, based on untenable grounds, nor an objectively unreasonable application of established federal law.  28 U.S.C. § 2254(d)(2).  Therefore, the Court concludes that Mr. Thompson's sixth habeas claim be denied and dismissed with prejudice.

**G.      Seventh Claim – Limiting Instruction**

Related to his sixth claim for relief discussed above, is Mr. Thompson's seventh claim for relief, in which he argues that his constitutional rights to due process were violated by the trial court's Instruction No. 7 regarding evidence on the subject of Julie Maroni's death.  ECF No. 7-1, p. 15; ECF No. 7-2, pp. 29-32.  He argues that the instruction essentially told the jury that the element of knowledge had already been established.  ECF No. 7-1, p. 15.

REPORT AND RECOMMENDATION - 40

Instruction No. 7 stated:

> Evidence introduced in this case on the subject of the death of Julie Maroni has been admitted for a limited purpose.  The evidence has been admitted as evidence of the knowledge of the participant or participants in the assault of Calvin Labee. **You must not consider this evidence for any other purpose**.

*See* ECF No. 47, Supplemental Exhibit 7 (Court's Instructions to the Jury) (emphasis added).

The Washington Court of Appeals determined that the jury was correctly instructed in accordance with state law when the trial court issued Instruction No. 7:

> Thompson similarly argues that jury instruction seven "was also prejudicial and the giving of this instruction denied Thompson a fair trial."  SAG at 8.

> Jury instruction seven stated, "Evidence introduced in this case on the subject of the death of Julie Maroni has been admitted for a limited purpose.  This evidence has been admitted as evidence of the knowledge of the participant or participants in the assault of Calvin Labee.  You must not consider this evidence for any other purpose."  CP at 219.

> The number and specific language of jury instructions is a matter within the trial court's discretion.  *State v. Rehak,* 67 Wn. App. 157, 165, 834 P.2d 651 (1992), *review denied,* 120 Wn.2d 1022, and *cert. denied,* 508 U.S. 953 (l993); *State v. Ellison,* 36 Wn. App. 564, 576, 676 P.2d 531, *review denied,* 101 Wn.2d 1010 (1984).  "While each party is entitled to have his theory of the case set forth in the court's instructions, it is axiomatic that the trial court has considerable discretion in how the instructions will be worded."  *State v. Dana,* 73 Wn.2d 533, 536, 439 P.2d 403 (1968) (citing *Roberts* v. *Goerig,* 68 Wn.2d 442, 413 P.2d 626 (1966)).  As cited with approval in *State v. Long,* 19 Wn. App. 900, 901-02, 578 P.2d 871, *review denied,* 91 Wn.2d 1010 (1978) (quoting *Levea* v. *G.A. Gray Corp.,* 17 Wn. App. 214, 224-25, 562 P.2d 1276, *review denied,* 89 Wn.2d 1010 (1977)):

> The test of sufficiency of instructions given on a party's theory of the case is that (1) they permit the party to argue his or her theory of the case; (2) they are not misleading; and (3) when read as a whole they properly inform the trier of the fact on the applicable law.  *State v. Dana,* 73 Wn.2d [at] 537 []; *State v. Lane,* 4 Wn. App. 745, 747, 484 P.2d 432 (1971).  It is discretionary with the trial court as to how many instructions are necessary to fairly present a litigant's theories.  *Anderson v. Red* & *White Constr. Co.,* 4 Wn. App. 534, 538, 483 P.2d 124 (1971).

REPORT AND RECOMMENDATION - 41

Here, Thompson essentially argues that the instruction "releives [sic] the State of its burden to prove every element of the crime beyond a reasonable doubt."  SAG at 8-9.  As he argued before the trial court, "That's basically telling the jury that – that's what they have to find, that I had knowledge."  8 RP (Dec. 13, 2004) at 798.  We hold that the trial court did not abuse its discretion in determining the content of jury instruction seven.

First, in rejecting Thompson's jury instruction, the trial court stated, "I believe that, consistent with the Court of Appeals decision in this case, that the evidence regarding the murder of Julie Maroni was being admitted for the purpose of establishing the knowledge of Mr. Thompson of the assault of Calvin Labee." 8 RP at 798.

Second, the trial court considered, and adopted much of, the State's proposed language.  **This language did not call the "killing of Julie Maroni a murder."**  8 RP at 802.  Furthermore, it "told the jury the limited purpose for which the evidence has been introduced."  8 RP at 802.

Third, the trial court recognized Thompson's concerns, stating:

I understand it's a fine line between the Court commenting on the evidence and telling them that that fact has already been established, which we absolutely do not want to do, and telling them it has been admitted only for a limited purpose because we don't want them to reach a conclusion that you are guilty because of the murder of Julie Maroni; that you're guilty of assault in the first degree.

8 RP at 803-04.

Fourth, based on Thompson's suggestion, the trial court changed the instruction's language from the "killing of Julie Maroni" to the "death of Julie Maroni."  8 RP at 806.

Finally, the trial court correctly noted, "[Jury instruction seven] doesn't mean that the State has met its burden of proof on knowledge, it simply means that it's offered for that purpose.  The jury can completely disregard it.  That's up to them."  8 RP at 808.  There was no error.

ECF No. 18, Exh. 27 at 12-14 (emphasis added).  *See also* ECF No. 47, Supplemental Exh. 7 (at Jury Instruction No. 7).

REPORT AND RECOMMENDATION - 42

Claims that merely challenge the correctness of jury instructions under state law cannot reasonably be construed to allege a deprivation of federal rights. *Van Pilon v. Reed*, 799 F.2d 1332, 1342 (9th Cir.1986) (citation omitted).  To merit federal habeas relief when an allegedly erroneous jury instruction is given, or an instruction is omitted, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  *Estelle*, 502 U.S. at 71-72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

In a criminal trial, a jury instruction violates due process if it fails to give effect to the requirement that the State prove every element of the offense.  *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L.Ed.2d 701 (2004) (*citing Sandstrom v. Montana*, 442 U.S. 510, 520-21, 99 S. Ct. 2450, 61 L.Ed.2d 39 (1979)); *see also Keating v. Hood*, 191 F.3d 1053, 1061 (9th Cir.1999) (instruction that relieves state of burden of proving *mens rea* beyond reasonable doubt contradicts presumption of innocence and invades function of jury, thereby violating due process), *cert. denied*, 531 U.S. 824, 121 S. Ct. 69, 148 L.Ed.2d 34 (2000), *abrogated on other grounds, Mancuso v. Olivarez*, 292 F.3d 939, 944 n. 1 (9th Cir.2002) (citation omitted).

This Court concurs with the conclusions of the Washington appellate courts that the trial court did not err when it issued the limiting instruction.  The trial court noted that the evidence regarding the death of Julie Maroni was being admitted only to show that Mr. Thompson had knowledge of the assault of Calvin Labee.  The trial court referred not to the "killing," but to the "death of Julie Maroni;" language contained within the instruction advised the jury that they were not to consider the evidence for any other purpose than the one described; the trial court considered Mr. Thompson's concerns ("we don't want them to reach a conclusion that you are guilty because of the murder of Julie Maroni"); and, the trial court noted that the instruction did

REPORT AND RECOMMENDATION - 43

not advise the jury that the state had met is burden of proof on knowledge, but simply that the evidence was offered for that purpose.  As stated by the trial court, "[t]he jury can completely disregard it.  That's up to them."  ECF No. 18, Exh. 17, p. 14.

This Court's review is limited to whether an allegedly defective jury instruction so infected the entire trial that the resulting conviction violates due process.  *See, Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir.), cert. denied, 507 U.S. 992 (1992) (quoting *Cupp*, 414 U.S. at 147). In addition, juries are presumed to follow instructions that are given to them by the court, and we are required to assume that the jury followed the instructions.  *United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978) (citations omitted) (emphasis added); *see also*, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Judging the foregoing instruction within the context of the jury instructions as a whole and in light of the trial record, the undersigned concludes that Mr. Thompson has failed to establish that there was a reasonable likelihood that the jury applied the instruction in a way that violated a constitutional right.

Accordingly, the Court concludes that the Washington courts' rejection of Mr. Thompson's claim was neither contrary to nor involved an unreasonable application of clearly established law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(2). Therefore, the undersigned recommends that Mr. Thompson's seventh habeas claim be denied and dismissed with prejudice.

**H.  Eighth Claim – Omission of Prior Testimony**

In his eight habeas claim, Mr. Thompson 's contends that the trial court's admission of prior testimony violated his constitutional right to confront and cross-examine witnesses.  ECF No. 7-1, p. 17.  Specifically, Mr. Thompson argues that:

1
2          In this case, the State's witnesses Jones and Brown were declared
3     unavailable to testify at Thompson's second trial.  (11/02/04 RP 4-5; RP 6 591-
      92).  As for Jones, he was present in court, but refused to testify on the bases [sic]
      "he didn't have anything to lose or gain by doing it."  RP 327-356.  In regards to
4     witness Brown, she died shortly after the end of Thompson's first trial of a
      cocaine overdose.  Thus, the question here is whether Thompson had full and fair
      opportunity for cross-examination.

5     ECF No. 7-2, p. 32.
6
7         The Washington Court of Appeals rejected this claim:
8
9             Both Brown and Jones testified at Thompson's first trial.  But Brown
      passed away before Thompson's second trial, and Jones refused to testify.
10    Accordingly, the State sought to introduce transcripts of their testimony from
      Thompson's first trial.  Over Thompson's objections, the trial court admitted the
11    testimony under ER 804(b)(1) and allowed the prosecution to read the former
      testimony of Brown and Jones.
12
13            Thompson contends that the trial court erred in admitting the former
      testimony of Brown and Jones under ER 804(b)(1).  He claims that the trial court
14    erred in finding that he and his attorney had a similar motive to develop the
      testimony of Brown and Jones by cross-examination at the first trial.  Thus, he
      argues that the trial court violated his right to confrontation.
15
16            We review a trial court's decision to admit or exclude evidence for abuse
      of discretion.  *State* v. *DeVincentis,* 150 Wn.2d 11, 17, 74 P.3d 119 (2003); *see*
17    *also State* v. *Finch,* 137 Wn.2d 792, 810, 975 P.2d 967, *cert. denied,* 528 U.S. 922
      (1999).  A court abuses its discretion when it exercises its discretion on manifestly
      unreasonable or untenable grounds or reasons.  *Finch,* 137 Wn.2d at 810.
18
19            The Sixth Amendment to the United States Constitution provides:  "In all
      criminal prosecutions, the accused shall enjoy the right . . . to be confronted with
20    the witnesses against him."  U.S. CONST. amend. VI.  The confrontation clause
      places two conditions on the admission of former testimony.  The State must
21    show: (1) that the declarant is unavailable at the time of trial and (2) that the
      defendant had a prior opportunity to cross-examine the declarant.  *See Crawford*
22    *v. Washington,* 541 U.S. 36, 50-51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)
      (holding that the confrontation clause bars out-of-court testimonial hearsay unless
23    the declarant is unavailable and the defendant had a prior opportunity to cross-
24    examine the declarant).

25            Similarly, under ER 804(b)(1)[5], former testimony of an unavailable
26    witness is admissible only if the party against whom it is offered "had an
      opportunity and similar motive to develop the testimony by direct, cross, or

REPORT AND RECOMMENDATION - 45

redirect examination" when the witness testified.  ER 804(b)(1); *State* v. *DeSantiago,* 149 Wn.2d 402, 411, 68 P.3d 1065 (2003).

Thus, the former testimony of Brown and Jones is inadmissible if it fails to satisfy either the confrontation clause or ER 804.  *DeSantiago,* 149 Wn.2d at 411.  It is undisputed that Brown and Jones were "unavailable" under the confrontation clause and ER 804.  Thompson does not contest the trial court's determination of unavailability.  The question remains whether Thompson and his attorney had the "opportunity" and a "similar motive" to cross-examine Brown and Jones during the first trial.

### A. Opportunity to Cross-Examine

Thompson has not argued whether he and his attorney had the opportunity to cross-examine Brown and Jones during the first trial.  And we have no evidence before us that the first trial court took any action to unfairly prevent or restrict cross-examination.  We hold that Thompson and his attorney had an opportunity to cross-examine Brown and Jones at the first trial.

### B. Similar Motive to Cross-Examine

In considering whether a defendant had a similar motive for purposes of ER 804, we do not ask "simply whether at the two proceedings the questioner takes the same side of the same issue."  *United States v. DiNapoli,* 8 F.3d 909, 912 (2d Cir. 1993).  We also ask "whether the questioner had a substantially similar interest in asserting that side of the issue."  *DiNapoli,* 8 F.3d at 912.  Even so, "ER 804(b)(1) does not require that the issues at the prior proceeding be identical."  *State* v. *King,* 113 Wn. App. 243, 292, 54 P.3d 1218 (2002), *review denied*, 149 Wn.2d 1015 (2003).

> [T]he rule requires that the issues in the first proceeding, and hence the purpose for which the testimony was there offered, must have been such that the party against whom the testimony is later offered ... had an adequate motive for testing the credibility of the testimony given in the earlier proceeding and offered in the later proceeding.

5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 804.18, at 100 (4th ed. 1999).

Thompson argues that "the motive was not similar in both trials because the elements of the crime that the State had to prove changed from the first trial to the second." Br. of Appellant at 11.  This argument is meritless.

REPORT AND RECOMMENDATION - 46

1    At the first trial, the trial court instructed the jury that a person who acts
2    with knowledge that his actions will promote or facilitate "a crime" can be an
3    accomplice.  *Thompson*, 2003 Wash. App. LEXIS 1712, at *7-*8 (emphasis
     added).  But this instruction was a misstatement of the law.  In fact, for
4    accomplice liability to attach, "a defendant must not merely aid in any crime, but
     must knowingly aid in the commission of *the* specific crime charged."  *State* v.
5    *Brown,* 147 Wn.2d 330, 338, 58 P.3d 889 (2002) (emphasis added).  The State
     conceded this error and we reversed and remanded the assault conviction.
6    *Thompson,* 2003 Wash. App. LEXIS 1712, at *1, *7.

7          At the second trial, the trial court instructed the jury that a person who acts
8    with knowledge that his actions will promote or facilitate "*the* crime of assault"
     can be an accomplice.  Clerk's Papers (CP) at 221 (emphasis added).

9          Thompson contends that "on retrial, the State had a higher and different
10   burden of proof."  Br. of Appellant at 11.  Essentially, he argues that at the first
     trial he and his attorney "did not have a motive to cross-examine Brown and Jones
11   on the issue of whether there was a discussion and agreement to commit first
     degree assault, or merely discussion and agreement to commit only a robbery."
12   Br. of Appellant at 11.

13         But, at both trials Thompson had a similar, if not the same, incentive to
14   cross-examine Brown and Jones and to thereby challenge their credibility.  At
     both trials, the State charged Thompson with first degree assault.  As the State
15   correctly notes, "While the second trial involved fewer counts that [sic] the first
     trial, defendant faced the same assault charge in the second trial as he faced in the
16   first trial."  Br. of Resp't at 11.  And, no critical fact arose in the second trial that
     was not also important in the first trial.

17         Furthermore, the State correctly asserts that the burden of proof did not
18   change between trials. The State notes:

19        The difference between the two trials was that the first jury could
20        find that defendant was acting as Jones'[s] accomplice in the
          assault if it found defendant had general knowledge that he was
21        promoting or facilitating Jones'[s] commission of "a crime" while
          in the second trial the jury had to find that defendant had general
22        knowledge that he was promoting or facilitating Jones'[s]
          commission of the crime of *assault.*
23
24   Br. of Resp't at 11-12.

25         We agree with the State.  At the first trial, the evidence adduced from
26   Jones concerned a planned robbery that involved an assault with weapons.  In
     defending himself at the first trial, Thompson and his attorney were motivated to

REPORT AND RECOMMENDATION - 47

show that Thompson was not promoting or facilitating the crime of assault or any other crime.  In the second trial, Thompson was similarly motivated to show that he was not promoting or facilitating the crime of assault.  Thus, Thompson had a similar, if not the same, motive for testing the credibility of Brown and Jones during the first trial.  The trial court did not abuse its discretion in admitting the former testimony of Brown and Jones. (Footnotes omitted).

ECF No. 18, Exh. 17, pp. 4-9.

The Washington Court of Appeals correctly noted that the Confrontation Clause of the Sixth Amendment places two conditions on the admission of former testimony.  The State must show: (1) that the declarant is unavailable at the time of trial and (2) that the defendant had a prior opportunity to cross-examine the declarant.  *See Crawford v. Washington,* 541 U.S. 36, 50-51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (holding that the confrontation clause bars out-of-court testimonial hearsay unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant).

Mr. Thompson does not dispute the trial court's finding that the witnesses were unavailable.  Rather, he argues that he did not have a similar motive to cross-examine them "on the issue of whether there was a discussion and agreement to commit first degree assault, or merely discussion and agreement to commit only a robbery."  ECF No. 7-2, p. 34.  He relies on *United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir. 1993) and the two-part test developed by the Second Circuit for determining "similar motive" under Rule 804(b)(1).

The Washington Court of Appeals also cited to *DiNapoli* in determining this issue, but noted that ER 804(b)(1) does not require that the issues at the prior proceeding be identical.  The Ninth Circuit also disagrees with the Second Circuit's requirement of similar "intensity of motivation":

We cannot agree, however, with the Second Circuit's gloss on Rule 804(b)(1).  As one of the dissenters in *DiNapoli* (an en banc decision) noted, the requirement of

REPORT AND RECOMMENDATION - 48

1

2

3

4

5

similar "intensity of motivation conflicts with the rule's plain language, which
requires "similar" but not identical motivation.  *Id.* at 916 (Pratt, Jr., dissenting);
*Geiger*, 263 F.3d at 1038 ("'Similar motive' does not mean 'identical motive.'")
(quoting *Salerno*, 505 U.S. at 326, 112 S. Ct. 2503 (Blackmun, Jr., concurring));
*see also Salerno*, 505 U.S. at 328-29, 112 S. Ct. 2503 (Stevens, Jr., dissenting)
("[A] party has a motive to cross-examine any witness who, in her estimation, is
giving false or inaccurate testimony about a fact that is material to the legal
question at issue in the proceeding.").

6

*U.S. v. McFall*, 558 F.3d 951, 963 (9th Cir. 2009).

7

8

9

Mr. Thompson was charged with first degree assault in both of his trials.  Thus, Mr.
Thompson would have had a similar, if not the same, incentive to cross-examine Brown and
Jones in an attempt to challenge their credibility.

10

11

12

13

14

15

Accordingly, the Court concludes that the Washington courts' rejection of Mr.
Thompson's claim was neither contrary to nor involved an unreasonable application of clearly
established law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(2).
Therefore, the undersigned recommends that Mr. Thompson's eighth habeas claim be denied and
dismissed with prejudice.

16

**I.      Ninth Claim – Constitutional Right to Trial by Jury**

17

18

19

20

In his ninth habeas claim, Mr. Thompson contends that the failure to instruct the jury on
the elements of the sentence enhancement denied him his constitutional right to trial by jury.
ECF No. 7-1, p. 19.  He describes his claim as follows:

21

22

23

24

25

At the close of trial, the jury found Thompson not guilty of the unlawfull [sic]
possession of a firearm charge, but found that Thompson or an accomplice was
armed with a firearm during the commission of the crime.  The trial court
sentenced Thompson to two (2) consecutive terms of 60 months imprisonment as
a sentence enhancement, but failed during trial to instruct the jury on the factual
elements required to be proven beyond a reasonable doubt before the jury could
consider and find true the allegation of use of a firearm for purposes of the
firearm sentence enhancement.

26

*Id.*

REPORT AND RECOMMENDATION - 49

The Washington Court of Appeals rejected Mr. Thompson's ninth claim, stating:

Thompson argues in his statement of additional grounds (SAG) that his sentencing enhancement was improper because the trial court did not instruct the jury to find a nexus between him, the weapon, and the murder.  He claims that this sentencing enhancement amounted to judicial fact-finding in violation of *Blakely* v. *Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Thompson raised the same argument in his previous PRP, which we rejected:

> Thompson has not presented the court's instruction to the jury and thus he has failed to show that they did not sufficiently inform the jury to find a relationship between the defendant, the weapon, and the crime.  *See also State* v. *O'Neal*, 126 Wn. App. 395, 109 P.3d 429 (2005) (discussing *[State* v. *Holt,* 119 Wn. App. 712, 82 P.3d 688 (2004)] and *[State* v. *Willis,* 153 Wn.2d 366, 103 P.3d 1213 (2005)]).  We assume then that the instructions were proper and that the court imposed the firearm enhancement based on the jury's not the judge's, finding of fact.

CP at 83.

Thompson attached the jury instructions to his SAG as an Exhibit, but they are not designated in the clerk's papers and are not properly within the record on review.  *See* RAP 9.2(b).  Also, there are no instructions regarding the actual firearm enhancement; he included the instructions for only murder, robbery, assault, and unlawful possession of a firearm.  Because he has not included instructions regarding the firearm enhancement as part of the record on appeal, we cannot review Thompson's claim and he cannot overcome the presumption that the instructions were proper.

Moreover, the record does not indicate that Thompson challenged the special verdict instructions at trial, and Thompson originally appealed only the accomplice instruction.  *See Thompson,* 2003 Wash. App. LEXIS 1712, at *7. The Washington Supreme Court has found that a defendant's failure to ask for the nexus instruction at trial generally bars relief on review on the ground of instructional error.  *State* v. *Eckenrode,* 159 Wn.2d 488, 491, 150 P.3d 1116 (2007) (citing *Willis,* 153 Wn.2d at 374).

Additionally, in this case, **the record shows overwhelming evidence to find a connection between the crime, Thompson, and the gun**.  Accordingly, we affirm the imposition of the firearm enhancement.

ECF No. 18, Exh. 37 at 7-8 (bold emphasis added).

REPORT AND RECOMMENDATION - 50

In *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that Washington exceptional sentences may not be imposed unless the supporting facts are admitted by the defendant or found by a jury beyond a reasonable doubt. *Blakely*, 124 S. Ct. at 2536. *Blakely* applies to weapon enhancements. *State v. Recuenco*, 154 Wn.2d 156, 162-63, 110 P.3d 188 (2005). But the principle underlying *Blakely* is that the trial court may impose no greater sentence than that allowed by facts reflected in the verdict alone or admitted by the defendant. *Blakely*, 124 S. Ct. at 2546.

Mr. Thompson takes issue with the Washington State Court of Appeals' conclusion that he could not overcome the presumption that the instructions were proper because the instructions were not included in his appeal or the clerk's papers. ECF No. 7-2, p. 36. Essentially, he claims that he is being forced to prove the negative because his complaint is that the trial court never gave an instruction to the jury "on the factual elements the prosecution was required to prove beyond a reasonable doubt before the jury could consider and find true the allegation of use of a firearm." *Id.* However, the record reflects that the jury was instructed that to convict the defendant of murder in the first degree, it must be proven beyond a reasonable doubt, *inter alia,* that "on or about the 8th day of July, 1998, the defendant or an accomplice shot Julie Maroni with a handgun." ECF No. 18, Exh. 41, Instruction No. 15. At the end of his re-trial on the crime of assault in the first degree, the jury completed a special verdict form finding that Mr. Thompson "was armed with a firearm at the time of the commission of the crime." ECF No. 18, Exh. 44, Vol. 9, p. 899. In addition, as correctly noted by the Washington Court of Appeals, there was "overwhelming" evidence to find a connection between the crime, Mr. Thompson, and the gun. *See,* ECF No. 18, Exh. 37 at 7-8.

REPORT AND RECOMMENDATION - 51

Accordingly, the Court concludes that the Washington courts' rejection of Mr. Thompson's claim was neither contrary to, nor involved an unreasonable application of, clearly established law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(2). Therefore, the undersigned recommends that Mr. Thompson's ninth habeas claim be denied and dismissed with prejudice.

**J.      Tenth Claim – Firearm Enhancement and Community Placement**

In Mr. Thompson's tenth ground for relief, he contends that the firearm enhancement and community placement portion of his sentence was in excess of the statutory maximum for the crime.  ECF No. 7-1, p. 21.

The Washington Court of Appeals rejected Mr. Thompson's tenth claim:

> Finally, Thompson argues that the two years of community placement, in addition to his prison sentences, exceeds the statutory maximum in violation of RCW 9.94A.505(5).  He makes a similar argument regarding his 60-month firearm enhancement.  Neither of these arguments has merit.
>
> The resentencing court sentenced Thompson to 361 months for first degree murder (count I), 123 months for first degree assault (count II), 60 months on each firearm enhancement (totaling 120 months), and 24-months community placements on each of the counts (totaling 48 months).  The maximum sentence for both first degree murder and first degree assault is life imprisonment.  *See* RCW 9A.32.040, 9A.32.030(2), 9A.20.021(1)(a).  Therefore, neither the addition of 120-months imprisonment for the firearm enhancement nor the 48-months community placement exceeded the statutory maximum sentence permissible under chapter 9A.20 RCW.  Thompson's argument is unpersuasive.

ECF No. 18, Exh. 37.

In *Blakely*, the Supreme Court relied on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000) to hold that Washington's sentencing procedure violated the Sixth Amendment by permitting a defendant to be sentenced above a standard sentencing range based on facts not found by a jury beyond a reasonable doubt.  *Blakely*, 542 U.S. at 301-05. The

REPORT AND RECOMMENDATION - 52

*Blakely* Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id*. at 303; see also *Butler v. Curry*, 528 F.3d 624, 635 (9th Cir.2008).  But the Court expressly limited its holding in *Apprendi t*o "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490.  In Washington, the statutory maximum includes the combined terms of prison and community custody: "a court may not impose a sentence providing for a term of confinement or community supervision, community placement, or community custody which exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW."  RCW § 9.94A.505(5).

Here, unlike in *Blakely*, the sentence imposed by the superior court was not based on the exceptional sentence provisions of the Sentencing Reform Act, but rather under RCW 9A.32.040, 9A.32.030(2), 9A.20.021(1)(a).  As noted by the Washington Court of Appeals, neither the addition of 120-months imprisonment for the firearm enhancement nor the 48-months community placement exceeded the statutory maximum sentence of life imprisonment that was permissible under chapter 9A.20.021(1)(a).

Here, a trial jury found all the facts necessary to impose the maximum sentence in this case.  *See* RCW § 9A.20.021 (1)(a); *Harris v. United States*, 536 U.S. 545, 566, 122 S. Ct. 2406, 153 L.Ed.2d 524 (2002) ("The Fifth and Sixth Amendments ensure that the defendant 'will never get more punishment than he bargained for when he did the crime,' but they do not promise that he will receive 'anything less' than that.") (*quoting Apprendi*, 530 U.S. at 498).  Because Mr. Thompson's combined sentence and community term could not have exceeded the potential maximum, his punishment did not exceed the statutory maximums for the charges on which he was convicted.  *Apprendi* and *Blakely* were therefore not violated.

REPORT AND RECOMMENDATION - 53

The Court concludes that the Washington courts' rejection of Mr. Thompson's claim was neither contrary to, nor involved an unreasonable application of, clearly established law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(2).   Therefore, the undersigned recommends that Mr. Thompson's tenth habeas claim be denied and dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard and based on a thorough review of the record and analysis of the law in this case, this court concludes that Mr. Thompson is not entitled to a certificate of appealability with respect to this petition.

## CONCUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Thompson's habeas petition be **denied**, and this action **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections

REPORT AND RECOMMENDATION - 54

will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).    Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 17, 2011**, as noted in the caption.


DATED this  25th  day of May, 2011.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 55